### ACCURSIO, et ux v. TOWN OF FLORIDA CITY.

Circuit Court, Dade County.

December 23, 1953.

Sarino R. Constanzo and Charles L. Vocelle, both of Miami, for plaintiffs.

Ernest E. Roberts, Roberts & Strickland, Miami, for defendant.

CHARLES A. CARROLL, Circuit Judge.

Final Decree, *December 23, 1953:* This cause came on for trial before the court on plaintiffs' bill for a declaratory decree and an injunction. The court has heard the evidence and arguments of counsel.

Plaintiffs are Mary P. Accursio, joined by her husband, Lucio James Accursio. Mrs. Accursio owns 20 acres within the city limits of the town of Florida City, acquired by her in 1945. On March 24, 1951 the town's zoning ordinance (no. 160) was enacted, under which her property was given an R-1 classification for single family residences.

This suit concerns the use of a building on the property which has been used for keeping and storing farm machinery and from time to time as living quarters for imported Puerto Rican itinerant farm workers, up to as many as 28 at one time. Plaintiffs seek to establish by this suit that such use of the property may be continued, notwithstanding R-1 zoning, as an established nonconforming use under the ordinance, and to enjoin pending and threatened prosecutions under the ordinance based on such use thereof.

The town, in its answer, contends there is no nonconforming use, and avers that the present structure was rebuilt on an application and plan for a one family residence. The answer charges that the plaintiffs are attempting to operate a hotel or rooming house for migratory Puerto Rican laborers in a one family dwelling located in an area zoned for single family occupancy. Section 1 A of the zoning ordinance defines the various zones of uses, including R-1, which is defined as follows—

> R-1. Single family residences, and, except as provided in Section 4, having a minimum first floor area of 750 square feet and a minimum lot area of 6000 square feet.

The nonconforming uses are recognized under the ordinance as follows—

### Section 3. NON-CONFORMING USES.

A. Any use or structure existing at the time of enactment or subsequent amendment of this ordinance, but not in conformity with its provisions, may be continued with the following limitations:

B. Any use or structure which does not conform to this ordinance may not be:

    a. Changed to another non-conforming use;

    b. Re-established after abandonment or discontinuance for ten (10) consecutive months;

    c. Extended or enlarged except in conformity with this ordinance; or

    d. Rebuilt or re-established after damage exceeding any one of the following:

        1. One half its volume,

        2. Fifty per cent (50%) of its floor area or 50% of the ground covered,

        3. Two-thirds of its fair sales value immediately prior to its damage.

In this case the plaintiffs do not challenge the constitutionality or validity of the zoning ordinance, nor is it contended that the area involved could not properly be given an R-1 classification. Plaintiffs claim they are entitled to an exception, under the provision for nonconforming uses.

Of the 20 acres of land, 6 are devoted to housing or living uses, and 14 remain farming land in character. In addition to the structure which is in controversy here, there is on this tract of land a duplex which was there before the zoning ordinance and two single-family dwellings.

As to the farm land part, after its acquisition in 1945, it was cleared and scarified. It can be said it has been made ready for farming, but never farmed in the sense of the planting and raising

of crops thereon, but only to the extent of use of a small fraction of the acreage for seed beds.

The plaintiff owner, Mary P. Accursio, and her husband have done no farming on the property in question, and, in fact, have not been farming anywhere. They have several grown sons, one or more of whom does engage in farming, being backed financially by their parents. Their sons' farming is done on acreage which they lease some four to five miles distant from this property. The seed beds on the subject property were theirs and not the plaintiffs'.

So the plaintiffs do no farming. The itinerant workers are not used by them, but they are used by their sons on the distant acreage. Much of the time the workers who live on this property are working for other people, although there was some evidence that at certain times all of them may be employed by the sons of the plaintiffs.

There was evidence that the itinerant workers did some work on the seed beds, but that would engage only a few of them, and it was brought out that the seed beds are prepared and under way before the time of the year when the itinerant workers come in.

There was nothing shown as to why such itinerant workers could not be housed elsewhere in or outside the town. There are two other barracks-type buildings in the town at which some workers are housed, which have been built since the zoning ordinance was passed, and which are in an area permitted for such uses under the ordinance.

At the time of the enactment of the zoning ordinance in March of 1951, the building in question was a barnlike structure consisting of two large rooms with a concrete floor. It had frame sides except on the north end. The wall there was concrete block, which had been changed when the building was enlarged by adding on a small room at that end, which room was concrete block construction and had a low slanting roof not a part of the main roof. In appearance it was a shedlike addition to the main structure.

After the passage of the zoning ordinance in March 1951, an owner's application was made to the town for a building permit for "Reroofing—on barn," on July 20, 1951. The town zoning inspector testified that he visited the building about a week later, that the roof was off and the wooden sides were down, leaving nothing but the floor and the small concrete block room standing (which had been added on the north). He concluded that the structure was more than half destroyed or demolished and should not be rebuilt except according to the one family zoning requirement for

that area. He reported to the town zoning board or council, whose members then visited the premises. They concurred with the inspector, and made an administrative determination that the building had been damaged or demolished to an extent which under the nonconforming use section of the zoning ordinance operated to termiate the nonconforming use.

They held a meeting at which the plaintiff, Mr. Accursio, was present and where he was so informed. Mr. Accursio became upset and angered and departed the meeting. One of his sons, on his behalf, then took part in the meeting, and upon being informed of the conclusion of the officials as above stated, and that his parents would not be able to proceed except to construct a one-family residence building, he made application on July 28, 1951, on behalf of the owner for "One family Residence & Garage"—with which he submitted drawings showing a front elevation view and showing a floor plan for a dwelling house, showing living room, one bedroom, kitchen, lavatory and garage.

The building was then completed using the same foundation, and with the exterior and main partitions in accordance with said drawing, but *omitting* the inner partitions which would have resulted in making the bedroom and living room—and leaving the two large rooms the same as they had been, simply putting up new walls of concrete block and a new roof.

There was a conflict in the evidence as to whether three walls were down or whether one of the other walls was still standing. There was a contention in the evidence on behalf of the plaintiffs that the structure was not destroyed to the degree or extent which, under the ordinance, would prevent its restoration in the nonconforming use nature.

On that point I find that the evidence preponderates with the defendant that the building was removed and destroyed to an extent justifying the action of the zoning officials. But it is not necessary for this court to make that finding because the officials made their own administrative determination that such was the case—and their finding was not challenged in the courts or disturbed at that time. Moreover, although reluctantly, such finding of the officials was accepted and acceded to, as shown by the record, which discloses that the original permit for "Reroofing— on barn" was cancelled July 28, 1951, and on the same date the new permit was applied for and issued for "One family Residence & Garage"—predicated on the plan for the dwelling house as above described. The structure was then rebuilt in accordance with the latter permit and plan.

The record here shows definitely that in July of 1951 the town, because of the R-1 zoning, refused permission to rebuild the barracks or multiple housing structure which had previously existed, and permitted only the one family dwelling house to be built. The plaintiffs cannot profit from their own conduct in failing to comply fully with the house plan for which the permit was given and in thereafter converting the structure into a rooming house or multi-family use in conflict with the one-family use zoning restriction.

Another theory was advanced on behalf of the plaintiffs, which is that the maintaining of a rooming house or barracks for these laborers, in the building in question, should be allowed as a usual and necessary incident to farming use of the farming tract. That theory is that the nonconforming use applies to the entire tract. Thus, if the tract was farming land at the time the ordinance was passed, and continues to be farming land, then the *farm* is a nonconforming use, and as an incident thereto it is appropriate to house laborers.

The contention is rejected by the court on two grounds. First, the incidental activity of housing these men is being done in a structure for which the owners obtained building permission only as and for a one family dwelling. Secondly, the actual situation does not support that theory. The tract is not, in fact, a farm, though it may be suitable for farming or classified as farm land. The laborers kept on the place are not actually engaged in the farming of that place. It is clear that almost entirely these laborers are employed and engaged in farming other property of various owners, and not the subject property.

Accordingly, it is ordered, adjudged and decreed as follows—

1. This court has jurisdiction of the parties and of the subject matter of this suit.

2. The rights of the parties in respect to the matter in controversy are hereby declared to be as defined and set forth hereinabove in this decree.

3. The plaintiffs' application for an injunction restraining the town from enforcing its zoning ordinance in the respects referred to above is hereby denied.

4. In view of the fact that this matter involved questions of law and fact as to which there were serious, honest disputes and differences of opinion between the plaintiffs on the one hand and the town officials on the other hand, it is presumed that unless there are some further violations with respect to this property by plaintiffs or other persons acting on their behalf, the plaintiffs will not

be penalized by the penalties which have already been asserted against them by the town on an arrest incident to this matter.

Stay Order, *December 31 1953:* This cause came on to be heard on plaintiffs' motion for an injunctive order staying enforcement against them of the provisions of the town zoning ordinance, the claimed violation of which was a matter of controversy herein. It appears that plaintiffs have filed notice of appeal to the Supreme Court from the final decree under the terms of which they would appear to be subject to certain penalties under the ordinance if they continue to use the building in question for other than one family residence purposes. I am of the opinion that plaintiffs have made a sufficient showing to entitle them to be protected pending the appeal by a stay order permitting them to continue the use of the premises of which the town complains, otherwise if the decree should be reversed the exercise of jurisdiction in this matter by the appellate court would not be fully effective to preserve their rights.

It is therefore ordered that the defendant town of Florida City, its officers, agents, servants and attorneys be and they and each of them are hereby enjoined and restrained, pending plaintiffs' appeal to the Supreme Court from the court's final decree, or until otherwise ordered by this court, from arresting, prosecuting or otherwise interfering with plaintiffs in their continued use of the premises in the manner in which they have used it in the past.

It is the intent and meaning of this order that notwithstanding the fact that this court has ruled that the premises are for use as a single family residence within the zoning requirements, such zoning shall not be enforced as to the premises pending the appeal.

A condition of this order is that the appeal shall be expedited, which shall include the filing of transcript of record in the Supreme Court in not more than 30 days from this date, and the filing of appellants' brief within 15 days thereafter, the filing of brief by appellee and reply brief by appellants to follow the rules as to time.